UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>   Walter W. Lacey<br><br>              Debtor | Chapter 13<br>Docket No. 10-19903 |
| Walter W. Lacey,<br>              Plaintiff,<br>    v.<br>BAC Home Loans Servicing, et al<br>           Defendants<br>    And<br>Darlene McCarthy,<br>           Intervener | ADVERSARY PROCEEDING<br><br>NO. 10-01249 |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF OBJECTION TO
MOTION FOR SUMMARY JUDGMENT

   NOW COMES Walter W. Lacey, plaintiff, by his attorney, and states the following in support of his objection to the motion for summary judgment.

*Introduction*

   By his complaint, Lacey essentially seeks to recover his home from a "predatory" mortgage servicer that wrongfully foreclosed a mortgage prepetition and allegedly sold the home to a third party, Darlene McCarthy. The Court granted McCarthy leave to intervene. Although the complaint is not directed at her, she has joined in the present motion of the defendants[1] for summary judgment. The defendants' memorandum in support of their motion is short on facts and long on erroneous propositions of law, as explained herein. In the Argument section, this memorandum first will respond to the defendants' memorandum, then discuss the merits of the complaint to the extent not covered in the first part.

*The issues presented*

   The issues before the court are whether 1) Bank of New York Mellon Trust established that it was the lawful owner of the note and mortgage through proper assignment at the time of the foreclosure; 2) whether Lacey was in default at the time of the foreclosure; 3) whether Bank of New York Mellon Trust foreclosed in strict compliance with Massachusetts statutes; and 4) whether Bank of America violated the HAMP guidelines, thus deceiving Lacey and/or misrepresenting its true intentions. The Defendants must establish all of this to merit summary judgment dismissing the case in its

---

[1] Throughout this memorandum, McCarthy will be referred to as "intervenor", not as a defendant, since the complaint seeks no relief against her. "Defendants" means only Bank of America (or whatever name it is using now) and Orlans|Moran.

entirety.  *See generally* U.S. Bank Nat.Ass'n v. Ibanez, 458 Mass. 637 (2011).  The court could grant only partial summary judgment.  See Fed.R.Civ.Pro. 56 (applicable to this matter by way of Fed.R.Bankr.Pro. 7056).

*Summary Judgment, generally*

Judge Young in the District Court recently said the following about summary judgment:

> Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if there exists a sufficient evidentiary basis on which the trier of fact could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it will affect the outcome of the case under the applicable law. Id. The moving party bears the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Save as to facts admitted by both parties, the court must disregard all evidence, even if unopposed, which the jury is free to reject, i.e., all evidence upon which a party bears the burden of proof. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000). Thus, summary judgment may be granted when a fair-minded jury could reach only one conclusion: in favor of the moving party.

Culhane v. Aurora Loan Servs. of Neb., -- F.Supp. 2d --, 2011 WL 5915515 (D.Mass. 2011).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson. (emphasis in the original).

It bears repeating that on a motion for summary judgment, the court does not <u>find</u> facts.  Instead, the court determines whether a *genuine* dispute exists over *material* facts.

> An issue is genuine if, on the evidence presented, it may reasonably be resolved in favor of either party at trial.  By like token, a fact is material if it possesses the capacity to sway the outcome of the litigation under the applicable law.  In the final analysis, then, the non-movant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trial-worthy issue persists.
>
> In applying these tenets, we take the facts in the light most hospitable to the non-movant and draw all reasonable inferences in that party's favor.  When doing so, however, we give no weight to conclusory allegations, unsupported conjecture, or free-wheeling invective.

Cordi-Allen v. Conlon, 494 F.3d 245 (1st Cir. 2007) (internal quotations and citations omitted).  "Summary judgment, however, is not a substitute for trial." Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994).

2

In support of his opposition, Lacey submits his original Verified Complaint, which may be considered as a affidavit on a summary judgment motion, <u>Sheinkopf v. Stone</u>, 927 F.2d 1259 (1st Cir. 1991); the affirmation of his wife, Marianne Miller-Lacey; and numerous exhibits. Of particular interest is the expert report prepared by Jay Patterson, a certified forensic auditor. In addition, Lacey notes that the arguments in support of the present motion are very nearly identical to the defendant's prior arguments in support of their motion to dismiss the complaint, which the court denied. Accordingly, Lacey incorporates by reference his prior argument and exhibits submitted in response to the motion to dismiss, and generally requests that the court take judicial notice of the record of this case.

Ultimately, Lacey's position may be summarized as claiming that the foreclosure was conducted in bad faith to his detriment, in violation of Massachusetts law. Nothing in the summary judgment record is sufficient to rebut Lacey's contentions to that effect. Accordingly the defendants' motion must be denied.

ARGUMENT

*The chain of title to the mortgage*

It is indisputable that Massachusetts law governs the validity of title to land within Massachusetts. *See generally* <u>Butner v. United States et al</u>, 99 S.Ct. 914, 440 U.S. 48, 59 L.Ed.2d 136 (1979). In Massachusetts, a person claiming to be a mortgagee can foreclose a mortgage without judicial assistance; the person need only comply with applicable statutory provisions and the terms of the Promissory Note and Mortgage. *See generally* <u>U.S. Bank National Association, trustee, v. Ibanez</u>, 458 Mass. 637 (2011). To employ the non-judicial foreclosure process, the Note must contain a power of sale, and the foreclosing party must comply strictly with the terms of the Note. <u>Id</u>. Absent strict compliance, the foreclosure sale is wholly void. <u>In re Bailey</u>, -- BR --, 2012 WL 1192785 (Bkrtcy.D.Mass. 2012), *quoting* <u>Ibanez</u>.

The foreclosing party must be either the original mortgagee or someone to whom the mortgage has been lawfully conveyed. This is because, as this court has recognized, Massachusetts law provides that a mortgage is a conveyance of an estate in land, and an assignment of the mortgage is a conveyance of that legal estate in the mortgaged premises. <u>In re Hayes</u>, 393 BR 259, 267 (Bkrtcy.D.Mass. 2008); *see also* <u>Ibanez</u>. Furthermore, although an assignment need not be recorded, <u>Id</u>., nonetheless the assignment must be <u>in existence</u>, *see* <u>In re Schwartz</u>, 366 BR 265 (Bkrtcy. D.Mass. 2007) ("While 'mortgagee' has been defined to include assignees of a mortgage, in other words the current mortgagee, there is nothing to suggest that one who expects to receive the mortgage by assignment may undertake any foreclosure activity."); <u>Ibanez</u>, 458 Mass. at 637. To put it another way, if the foreclosing party did not actually and lawfully own the mortgage at all times during the foreclosure process, including, for example, the statutorily required newspaper publication, the foreclosure was wrongful and wholly void. <u>Schwartz</u>, 461 BR 93 (Bkrtcy. D.Mass. 2011).

Bank of New York Mellon Trust asserts that the real estate mortgage was properly assigned, properly securitized, and properly foreclosed upon. However, it cannot prove through a proper chain of title that it was the proper holder of the mortgage <u>at all times during the foreclosure process</u>, not merely at the auction, because the chain of title is broken. *See the report and affirmation of Jay Patterson.* The confusing and contradictory

3

assertions as to the identity of the mortgagee, discussed below, rendered the purpose of notification futile.  Failure to provide notice in the manner required by the power of sale in the Note and the statute will render a foreclosure sale void.  Ibanez.

The mere fact that an assignment exists and may have been recorded at the registry of deeds is not dispositive; when a foreclosure is challenged, the court may – and should – look behind the face of the documents and determine whether they are valid.  Bevilacqua v. Rodriguez, 460 Mass. 762 (2011) (".... There is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect. ...  As a result, it is the effectiveness of a document that is controlling rather than its mere existence.")  In the present case, that means that the defendants cannot merely parade a series of documents before the court, without some evidence of their effectiveness, and hope to prevail on summary judgment.

As the Patterson report and affidavit make clear, the chain of title that Bank of New York Mellon Trust attempts to lay out is broken.  His report is based on the documents in the public record; this case; and the prior bankruptcy case of Lacey's wife.  This incomplete chain of title results in a "structural defect" which should cause the foreclosure to be void. Lacey executed a 15-year Promissory Note on March 29, 1996, in the original principal amount of $113,000.00, and gave it to Fleet Mortgage Corporation. This note was secured by a mortgage on Lacey's home. The Note and Mortgage were subsequently assigned by Fleet Mortgage Corporation to the Federal National Mortgage Association by assignment on January 19, 1999.  On September 20, 2004 a "Corrective" Assignment of Mortgage and Note was executed by Washington Mutual Bank, as successor to Fleet Mortgage Corporation, assigning both the note and mortgage to JP Morgan Bank as Trustee; there is no explanation of why the "Corrective" assignment was not executed by FNMA.  Then, on November 24, 2009, the Federal National Mortgage Association, by Wilshire Funding Corporation, as its attorney in fact, assigned the interest under the Mortgage/Deed of Trust to Bank of New York Mellon Trust.  The problem with this chain of assignments is that parties are assigning the note and mortgage from people who themselves did not hold clear and valid title.

Not only does the chain of title have missing assignments to it, but Lacey was given documents that had conflicting names as to the holder of his Note and Mortgage.  For instance, in the letter attached as Exhibit G that BAC Home Loans sent Lacey on February 1, 2010, it states that  the "name of the creditor to whom the debt is owed:  GMAC-RFC SSID Z86." Attached as Exhibit H shows that the following day, on February 2, 2010, the copy of the Servicemembers Civil Relief Act notice that was sent to Lacey stated that JP Morgan Chase Bank claims to be the holder of the mortgage. This establishes that the parties themselves were unsure of who actually held title to the Mortgage and Note at any given time. Defendants state in their Memorandum of Law in Support of Motion for Summary Judgment that the Bank of New York Mellon Trust held both the Note and Mortgage, but they have not satisfactorily demonstrated this by documentary evidentiary material.

In Massachusetts, unlike many other jurisdictions, the transfer of a note does not automatically transfer the mortgage with it. In re Marron, 455 B.R. At 6 (citing Barnes v. Boardman, 149 Mass. 106, 114 (1889). As a result, different entities may hold the mortgage and underlying note. Adamson v. Mortgage Electronic Registration Systems, Inc., No. 11-0693-H, 2011 WL 4985490, at *8 n. 9 (Mass. Super. Ct. Oct. 19, 2011).  Defendants state in their Memorandum that on November 24, 2009, the Federal National Mortgage

4

Association, by Wilshire Funding Corporation as its attorney in fact, assigned all beneficial interest of both the Note and Mortgage to the Bank of New York Mellon Trust. This conflicts with the other documents in the record, meaning that a genuine dispute over material facts exists, and summary judgment must be denied.

*The Note*

Exhibit A is the Promissory Note. It is devoid of any endorsements, and there is no evidence that an allonge is attached or ever was. The defendants, therefore, cannot legitimately claim to be the holder of the Note. *See* In re Shapoval, 441 BR 392 (Bkrtcy.D. Mass. 2010). It is an open question whether a mortgagee (assuming the defendants could prove that they are the mortgagee or an lawful assignee) that is not also the holder can foreclose. Culhane v. Aurora Loan Servs. of Neb., -- F.Supp. 2d --, 2011 WL 5915515 (D.Mass. 2011) (holding that in the absence of contrary precedent from the Supreme Judicial Court, a mortgagee must also be a holder in order to foreclose).

*The defendants' positions*

The defendants' memorandum is riddled with erroneous assertions of fact and conclusions of law. These range from the inconsequential but curious (such as their inability to get Lacey's first name correct; they repeatedly refer to him as "William" even though his name is "Walter"), to the virtually frivolous, such as the assertion that Lacey seeks "redemption of the property foreclosed upon" and that "there is no such cause of action for an "accounting" in the First Circuit", both of which are just plain wrong.

In their "Argument" section, beginning on page, the defendants first claim that the foreclosure was not wrongful. The section is captioned:

> **The Defendants are Entitled to Summary Judgment on the Wrongful Foreclosure Claim Because at the Time of Foreclosure the Bank of New York Mellon Held Both the Mortgage and Note, the Debtor was in Default, the Foreclosure Was Conducted in Accordance with Massachusetts Law, and Conducted in Good Faith with Due Diligence.**

The defendants claim that "As plead [sic], redemption is the only available remedy to the Plaintiff." *Memorandum at page 7.* This is simply wrong as a matter of Massachusetts law. The whole point of foreclosure is to *eliminate* a mortgagor's right of redemption, *see* Ibanez. If a foreclosure sale is conducted in accordance with the terms of the power of sale contained in the Promissory Note and with applicable Massachusetts law (including the duty of good faith and due diligence), then the mortgagor has <u>no</u> redemption rights after the sale. In re Crichlow, 322 BR 229 (Bkrtcy.D.Mass. 204). They are correct, however, that what Lacey wants – and is entitled to – is to have the foreclosure sale declared void and title to the property returned to him. *See* Schwartz, 461 BR 93 (Bkrtcy.D.Mass. 2011).

The defendants also err in asserting that an action pursuant to the Servicemembers' Act is a necessary predicate to foreclosure. It is not; the action can be done <u>after</u> foreclosure and the lack of such an action does not constitute a cloud on the title of the purchaser at the auction unless, arguably, a mortgagor was later determined to have been entitled to the protections of the act. Randle v. GMAC Mortg., LLC, 2010 WL 3984714 (Mass

5

Land Court, 2010), *citing* Beaton v. Land Court, 367 Mass. 385 (1975).

For the reasons previously argued about the chain of title to the mortgage, Lacey disagrees with the defendants that they have shown a complete and proper chain of title to the mortgage, and that they owned the mortgage at all of the relevant times, including the notice of default and the statutorily required newspaper advertising. Of particular concern is the letter from Bank of America in which it stated that sent Lacey on February 1, 2010, it states that the "name of the creditor to whom the debt is owed: GMAC-RFC SSID Z86." *See affidavit and report of Jay Patterson.* Attached as Exhibit H shows that the following day, on February 2, 2010, a copy of the Servicemembers Civil Relief Act notice that was sent to Lacey stated that JP Morgan Chase Bank claims to be the holder of the mortgage. This establishes that the parties themselves were unsure of who actually held title to the Mortgage and Note at any given time. It also establishes that the contractually and/or statutorily required notices to Lacey were defective, meaning that the resulting foreclosure is void.

The defendants next assert that the foreclosure was valid because Lacey was in default and they followed the statutory procedures strictly. The issue of default will be discussed below. As to the statutory procedures listed on page 13 of the defendants' memorandum, Lacey responds as follows:

1)   Notice of right to cure default, referring to paragraph 8 of the defendants' Statement of Material Facts, which refers to exhibit 1 attached to exhibit H. In fact, the reference apparently should be to exhibit 2.
2)   As stated previously, a Servicemembers' action is not a condition precedent to foreclosure.
3)   This apparently refers to exhibit H-4.
4)   This apparently refers to exhibit H-9.
5)   This apparently refers to exhibit H-11. The court will note that the published notice states that the holder is Bank of New York Mellon Trust Co, as successor to JPMorgan Chase Bank NA as Trustee, but does not name the "trust".
6)   The footnote indicates that this affidavit has not been executed.

As the Ibanez court made clear, it is not sufficient to comply solely with the statutory requirements; a foreclosing entity must also comply with the power of sale contained in the mortgage, and absent such a power, a judicial foreclosure is required. Norton v. Joseph, 77 Mass.App.Ct. 1120 (2010). Paragraph 21 of the mortgage (exhibit B), contains provisions regarding acceleration of the Note, along with the reference to the statutory power of sale. The language of the mortgage appears to track the statutory language. Similarly, paragraph 6 of the Promissory Note (exhibit A) contains provisions respecting default, which also appears to conform to the statute. The Promissory Note, however, has not been endorsed in any fashion, nor is there an allonge. The identity of the actual "holder" of the note, therefore, has not been established. *See generally* In re Maisel, 378 BR 19 (Bkrtcy.D.Mass. 2007).

In asserting that Lacey was in default, *see page 13 of the memorandum*, the defendants refer to the Statement of Material Facts at paragraphs 8 and 11. Those paragraphs merely state that Wilshire and Bank of America sent Lacey statements that he was in default; they do not *prove* default. Paragraph 11 refers to the affidavit, with

6

attachments, of Alejandra Silva, allegedly a Vice President at Bank of America. Among the attachments appears to be a document which she claims is an accounting, but she provides no explanation of the "accounting", nor does she identify when Lacey allegedly went into default. Furthermore, because it apparently relates to dates prior to Bank of America becoming the servicer, it is hearsay and she cannot attest to its accuracy. Lastly, the "accounting" is unintelligible, at least without some explanation.

The defendants also claim that they foreclosed in good faith and with reasonable diligence. It is undisputed that Bank of America invited Lacey to apply for a HAMP modification of his loan; that Lacey did apply; and that prior to the foreclosure sale, Bank of America told him his application was complete. *Exhibits K through N*. Nonetheless, Orlans|Moran conducted a foreclosure sale before Bank of American ever responded to the completed application. This is bad faith. *See* In re Cruz, 446 BR 1 (Bkrtcy.D.Mass. 2011) (holding that for purposes of a preliminary injunction, that the plaintiff was likely to prevail on a wrongful foreclosure claim when foreclosure was conducted while HAMP modification application was pending), *citing, inter alia*, Speleos v. BAC Home Loans Servicing, L.P. and Orlans|Moran, PLLC, 755 F.Supp.2d 304 (D.Mass. 2010). "Even if [the defendants] fully complied with the statutory requirements and its power of sale, the sale could still be invalidated upon a showing that [the defendants] failed to act in good faith in foreclosing the mortgage." In re Hall, 188 BR 476 (Bkrtcy.D.Mass. 1995). It being undisputed that the defendants foreclosed while a HAMP modification application was pending, they cannot properly claim to have foreclosed in good faith. This "dual-track" process is now forbidden by the recent settlement between Bank of America (along with other major servicers) and the attorneys general of 49 states. *See the Consent Judgment, exhibit 14, at page A-17.*

For all of the foregoing reasons, the defendants have failed to show that they foreclosed properly, and the motion must be denied.

**The Debtor Cannot Assert a Claim for Promissory Estoppel Because There is No Evidence of Representation Made by Bank of America Promising to Postpone the Foreclosure Sale on September 3, 2010 and There is No Evidence to Show That Plaintiff Detrimentally Relief on any Representation Made to the Plaintiff.**

Contrary to the defendants' assertions, both Lacey and his wife, in the Verified Complaint and in Mrs. Miller-Lacey's affirmation, state that various representatives of Bank of America promised, during telephone calls, to postpone foreclosure while the HAMP application was pending. There is nothing in the present record that rebuts their statements. Similarly, the fact that both Lacey and his wife had filed prior bankruptcy cases meant that they knew that they could avoid foreclosure by filing a bankruptcy case. Had Bank of America not made representations that foreclosure would not take place while the modification was being considered, they could have filed a bankruptcy case and not suffered a wrongful foreclosure. The detriment to them, as stated repeatedly in the Verified Complaint, is the loss of their equity of redemption and a substantial loss in value. *See* In re Hall, 188 BR at 483.

**The Plaintiff Cannot Prove His Claim for a Violation of the Massachusetts Consumer Protection Act Due to His Failure to Comply with the Notice Requirements of Massachusetts General Laws Chapter 93A.**

In order to prevail on a claim against the Defendants made pursuant to Mass. Gen. Laws. Ch. 93A, the Plaintiff must show that the Defendants engaged in unfair "methods of competition and unfair or deceptive acts or practices in business transactions." Mass. Gen. Laws ch. 93A, § 2. The statute requires that, "At least thirty days prior to the filing of any such unfair practices action, a written demand letter for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." Mass. Gen. Laws ch. 93A, §9(3). The Defendants state that because Plaintiff never sent written notice to the Defendants, Plaintiff's 93A claim must fail. This Court stated at a hearing on April 11, 2011 that: "The first amended complaint also passes the test for Chapter 93A, especially where the first complaint may be considered as the demand for settlement and demand for unfair and deceptive trade practice notice." The written demand must describe the complained-of acts with reasonable specificity. Piccuirro v. Gaitenby, 20 Mass. App. Ct. 286, 291-192 (1985). The counts in the First Amended Complaint describe the complained-of acts with reasonable specificity. The First Amended Complaint was sent to all of the Defendants, so therefore Plaintiff's claim for a violation of the Massachusetts Consumer Protection Act should *not* fail.

The defendants attempt to distinguish this case from York v. Sullivan, 369 Mass. 157 (1975). The attempt fails because it is well settled that the statutory requirement is not of a "demand letter" (emphasis added), but of a "written demand. What York said, essentially, is that a complaint may constitute the written demand, and an amended complaint may add a count pursuant to chapter 93A. The defendants carefully omit to recognize that this court has followed York (as it must) in circumstances nearly identical to this case. In re Hart, 246 BR 709 (Bkrtcy.D.Mass. 2000). *See also* Rodi v. New England School of Law, 389 F.3d 5 (1st Cir. 2004) (noting that "Massachusetts courts typically have allowed plaintiffs to amend in order to cure this kind of modest pleading defect.")

**The Defendants Did Not Violate the Real Estate Settlement Procedures Act ("RESPA") Because They Never Received a Qualified Written Request and the Debtor Cannot Prove He Sustained Actual Damages.**

Under the Real Estate Settlement Procedures Act (RESPA), a Qualified Written Request ("QWR") is a written correspondence that (i) identifies the name and account of the borrower, and (ii) includes a statement of the reasons that the account is in error or provides sufficient detail regarding the information sought. 12 U.S.C. 2605(d)(1)(B). Any reasonably stated written request for account information can be a qualified written request. Catalan and Morris v. GMAC Mortgage Corp., 629 F.2d 676 (7th Cir. 2011). To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond. Id. Lacey's letter dated February 26, 2010 included the account number as well stating: "We believe the letter we received with the amount of outstanding

8

debt is incorrect" and "At this time we are writing to dispute the amount noted on the enclosed statement." This letter from the Laceys should have triggered BAC Home Loan's obligation to respond. This letter is in fact a qualified written request and it is undisputed that no response was made.  Therefore Plaintiff's claim for a violation of the Real Estate Settlement Procedures Act should *not* fail.

Amazingly, the defendants claim that Lacey cannot prove any damages resulting from Bank of America's failure to respond to the QWR.  The loss of the equity of redemption and the stress and fear associated with blackmail-like demands for the payment of money with no known justification, combined with the deceit and misrepresentation as to the imminence of foreclosure, all are damages.  The defendants' motion on this point should also be denied.

### The Defendants Did Not Violate the Fair Debt Collection Practices Act Because They Did Not Commit Any Unfair or Deceptive Acts.

Defendants claim in their Memorandum of Law that they are not debt collectors under either the FDCPA or the MFDCPA because the Plaintiff was in default and the Defendants' actions were to inform the Plaintiff of the planned foreclosure sale. In paragraph 24 of the First Amended Complaint, Lacey alleges that the "hello-goodbye" letter, notifying him of the change in servicer, claimed that he owed $116,348.59, a fact that the Defendants admitted in their answer, even though Lacey only borrowed $113,000 in 1996 as alleged in paragraph 15, a fact also admitted in their answer, and in paragraph 27 states that the term of the Note was 15 years, a fact also admitted in their answer, meaning that in 2010, he was close to the end of the term of the Note.  Read together in the light most favorably to Lacey, as the court must on the present motion, Lacey has plausibly alleged that the Defendants were attempting to collect amounts not actually owed, and therefore Plaintiff's claim for a violation of the Fair Debt Collection Practices Act should *not* fail. The Defendants argue that the FDCPA does not apply to creditors seeking to collect its own debt from a Plaintiff.  In the letter dated February 1, 2010, from BAC Home Loans states that it is a debt collector: "1) Under the Fair Debt Collections Practices Act, as well as various state-specific acts, BAC Home Loans is considered a debt collector."  Having admitted in this letter that they are a debt collector, BAC Home Loans must be judicially estoppel from denying that they are not debt collectors.  Even without that admission, Bank of America admitted in the letter dated February 1, 2010, that the creditor was GMAC-RFC SSID Z86.  Thus by Bank of America's own admissions, it was not collecting its own debt.

### *Defendants made fraudulent representations to the Plaintiff.*

A common law action for deceit or misrepresentation consists of five elements that the plaintiff must prove: (1) that the misrepresentation concerned a matter of fact; (2) that it was made with the intention to induce another to act or rely upon it; (3) that it was made with knowledge of its untruth or was the failure to disclose known facts when there was a duty to disclose; (4) that it was intended that it should be acted upon; and (5) that damages resulted. Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411 (2005). Lacey alleged in his Verified Complaint that representatives of BAC Home Loans had promised to postpone the sale, and Lacey was entitled to rely on that promise. Lacey

9

refrained from retaining an attorney or filing a bankruptcy case in reliance on BAC Home Loan's promise, and it would postpone foreclosure, and was required to do so by the HAMP regulations. The representations made by BAC Home Loans was fraudulent and therefore, Plaintiff's claim should not fail.

### Recoveries in Negligence are Barred by the Absence of a Duty and the Economic Loss Doctrine.

The Defendants claim that they owed no duty to Lacey and that no duty ever existed, and thus a count for negligence cannot be sustained. Defendants argue in their Memorandum of Law that Lacey cannot establish a claim for negligence against BAC Home Loans, or any of the Defendants for that matter, because there is no common law duty between a servicer/lender and a borrower. In re Fordham, 130 B.R. 632, 646 (Bankr. D. Mass. 1991) However, In re Fordham is irrelevant to the present case, as it pertains to lender liability to a borrower in a commercial, not consumer, transaction, for negligence in making a loan. The Defendants here had a duty of care while considering Lacey's loan modification application and breached that duty when they did not respond within thirty (30) days with a decision regarding the application and also by allowing the foreclosure proceedings to move forward while a decision was not reached on their modification.

Furthermore, it is well settled that a foreclosing mortgagee has a fiduciary duty to the borrower and all others "claiming in his right", such as junior encumbrances or liens. Sandler v. Silk, 292 Mass. 493 (1935). In arguing that the "economic loss doctrine" bars recovery, the defendants seem to admit that Lacey suffered an economic loss, and they cannot plausibly deny it. They claim that in the absence of personal injury or property damage, the doctrine bars recovery. However, the doctrine "does not apply to 'pecuniary loss incurred as a result of an actionable misrepresentation.'" Passatempo v. McMenimen, 461 Mass. 279 (2012). Thus the defendants' argument on this point has no merit.

### A Demand for an Accounting is Not a Cause of Action and Cannot Be the Basis for Damages.

The defendants claim that "there is no such cause of action as an 'accounting' in the First Circuit." As with most of their argument, this is just plain wrong. "If a mortgagee begins the process of foreclosure, a suit in the Superior Court will lie to enjoin the foreclosure and to obtain an accounting. In such a suit, the issue whether the mortgage conditions have been violated may be litigated." Beaton v. Land Court, 367 Mass. 385 (1975).

The defendants' claim that they have tried to comply with Lacey's "amorphous request" by providing a "loan history" as well as affidavits. These documents are entitled to no weight at all since the "loan history" is unintelligible, at best, and the affidavits are hearsay. To obtain summary judgment, a moving party must provide documents of "evidentiary quality", *see, e.g.,* New Haven Savings Bank v. Follins, 431 F.Supp.2d 183 (D.Mass. 2006). "'It is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted." Hannon v. Beard, 645 F.3d 45 (1st Cir. 2011).

There is no reasonable question that Lacey is entitled to an accounting. If Bank of America wishes to prove Lacey was actually in default, it will provide one in a

10

comprehensible form and by way of admissible evidence.

**The Debtor Cannot Prove That the Defendants Caused Intentional Infliction of Emotional Distress or Negligent Infliction of Emotional Distress Because the Conduct of the Defendants was Neither Extreme Nor Outrageous.**

In order to state a claim for emotional distress, the Plaintiff must prove that: (1) the Defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; (2) the Defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community; (3) the Defendant caused the Plaintiff's distress; and (4) the emotional distress suffered by the Plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.  Tomaselli v. Beaulieu, No. 08-10666-PBS, 2010 U.S. Dist. LEXIS 42611 (D. Mass. 2010).

The Defendants claim in their Memorandum of Law that no evidence exists that the Defendants actions were extreme or caused Plaintiff's alleged distress. The duty of care is met by the indisputable duty that a foreclosing mortgagee owes to a mortgagor. As Lacey states in his verified complaint and his wife reaffirms in her affirmation, Lacey had to receive medical treatment for the Defendants' actions in refusing to respond to his inquires about their claim of default, and thereafter of wrongfully foreclosing upon Lacey's home. This caused Lacey emotional distress in the nature of loss of sleep, anxiety, and fear over losing his home, causing Lacey to be taken to the hospital to be treated for a possible heart attack brought on by these matters. Any reasonable person would know that a wrongful foreclosure would cause a mortgagor emotional distress. Therefore, the complaint adequately states a plausible claim for relief and the motion for summary judgment must be denied.  See Morse v. Mutual Federal Sav. & Loan Ass'n of Whitman, 536 F.Supp. 1271 (D.Mass. 1982) ("Where defendant's wrongful acts were a wilful misuse of its statutory power of sale, and could be expected to humiliate and distress plaintiffs, they may recover compensation for mental suffering.")

{balance of this page intentionally left blank}

11

## CONCLUSION

BAC Home Loans, Bank of New York Mellon Trust, and Orlans/Moran have not shown that they are entitled to judgment as a matter of law.  Instead, its own evidence tends to show that the mortgage was never lawfully conveyed to Bank of New York Mellon Trust.  Based on Bank of New York Mellon Trust's own evidence, they do not hold proper title to the mortgage, and they do not hold the Note.  Consequently, the motion must be denied.

April 27, 2012

                          Respectfully submitted,
                          Walter W. Lacey
                          By his attorney,

                          /s/       *David G. Baker*
                          David G. Baker, Esq.
                          236 Huntington Avenue, Ste. 306
                          Boston, MA  02115
                          617-340-3680
                          BBO# 634889